SOUTHERN PINE FIBRE CO. v. NORTH AUGUSTA LAND CO.

(Circuit Court, D. South Carolina. December 23, 1892.)

1. PAROL EVIDENCE TO VARY WRITTEN CONTRACT.
A land company made to a manufacturing company the following proposition, which was accepted: "The North Augusta Land Company will donate to your company 3 acres of land, to be selected by it, on its property opposite to the city of Augusta, and will promptly build, or cause to be built, to the land so donated, a side track, and when your factory is completed, and machinery in successful operation, will buy from you $2,500 worth of your treasury stock at its par value, when your factory is in successful operation, as aforesaid. The above is conditioned upon your beginning work at once." Held, that the completion of the factory was not a condition precedent to the building of the side track, and that parol evidence to that effect should not be admitted.

2. SPECIFIC PERFORMANCE—REQUISITES OF THE CONTRACT.
The land company conveyed the land, and subsequently acquired a right of way for the side track. The factory was built, but its machinery proved inefficient, and was run from time to time merely to discover defects and make necessary improvements. Held, that specific performance of the contract to build the side track should nevertheless be enforced.

3. CONTRACTS—MATTERS EXCUSING PERFORMANCE—DAMAGES.
Damages for delay in building the side track should not be awarded for the period when the land company did not own the right of way, it having used every effort to acquire it.

In Equity. Bill by the Southern Pine Fibre Company against the North Augusta Land Company for the specific performance of a contract. A demurrer to the bill was overruled. 50 Fed. Rep. 26. The case is now on final hearing. Decree for complainant.

Fleming & Alexander, for complainant.
Jackson & Olive, for defendant.

SIMONTON, District Judge. This case has already been heard on demurrer to the bill. 50 Fed. Rep. 26. The demurrer was overruled, and, the answer having been filed, the cause comes up on full hearing. The complainant sought a location for a factory, and for that purpose its president visited several of the southern states. Finally he met, in Atlanta, Mr. Patrick Calhoun, president of the North Augusta Land Company. This company was the owner of a body of land opposite the city of Augusta, which they wished to develop. At the instance of Mr. Calhoun, the president of the complainant visited the tract of the land company, found it in many respects suitable for his purposes, and opened negotiations for a site. The only objection to it was its distance from a railroad. After correspondence and interviews in which the views of each party were made known, a proposal was formulated by the land company in the shape of the following letter:

"New York, June 20th, 1891.
"J. B. N. Berry, Esqr., Presdt. Southern Fibre Co.—Dear Sir: The North Augusta Land Company will donate to your company 3 acres of land, to be selected by it, on its property opposite the city of Augusta, and will promptly build, or cause to be built, to the land so donated, a side track; and when your factory is completed, and machinery in successful operation, will buy

from you ($2,500) twenty five hundred dollars' worth of your treasury stock at its par value, when your factory is in successful operation, as aforesaid.
"Yours, truly,                                   Pat Calhoun, Presdt.
"The above is conditioned upon your beginning work at once.    P. C."

This proposal was accepted. Contracts for building the factory were given out. Its construction began at the end of June on the first part of July. It was finished, and machinery all put in, some time in November or December of that year. The machinery did not prove to be efficient, and it was run from time to time in order to discover defects, and to make such improvements as showed themselves necessary. It is not yet in complete condition. The president of the company is confident that success will attend his efforts. His difficulty is not in the patents for his processes, but in adapting the machinery to them. It is manifest that the complainant company in good faith is using every effort to put the enterprise in successful operation. The $2,500 of treasury stock has never been tendered by complainant to defendant. On the other hand, the land company donated the three acres selected by the fibre company, and has executed to the latter company a conveyance in fee simple without any condition, qualification, or defeasance whatsoever, accompanied by a warranty of title against itself and its successors "and against every person whomsoever." The lot selected lies between two lines of railroad. The right of way over the lands between the site of the factory and a railroad was not controlled by the defendant company, in whom the right of eminent domain did not exist at the date of the contract or of the filing of the bill, or at the filing of the answer. It has, however, purchased and now is in possession of the right of way.

The bill prays specific performance of the uncompleted part of the contract,—building the side track,—and damages for the failure thus far to complete it. The position taken in the answer is this: The defendant was induced to enter into this contract by representations of the plaintiff that it owned patents and machinery for the manufacture of a valuable article of commerce, and that it would put these in active and successful operation on such land as defendant would donate to it; that relying on this, and wholly induced by this, defendant signed the contract, the condition precedent being that it was not to be bound by any of its terms until the defendant had erected, established, and put in successful operation its factory thereon. The only evidence before the court of the contract between the parties is the letter of Mr. Calhoun, above quoted, and the fact that it was accepted by the complainant, and that the condition in the postscript was performed. The reduction into writing of the proposition of plaintiff excludes all evidence of antecedent conversations and understandings, except, perhaps, to explain some latent ambiguity, if any existed. We look, therefore, to this written instrument as containing the intent of the parties. It contains three propositions on the part of the land company: (1) To donate to the fibre company three acres of land, to be selected by the fibre company, on the property of the land company opposite the city of Augusta; (2) to promptly build, or cause to be built, to the land so

donated, a side track; (3) and when the factory is completed, and machinery in successful operation, to buy from the fibre company $2,500 worth of its treasury stock at par, payable in cash when the factory is in successful operation. So far there is no qualification or condition annexed to the first two propositions. The postscript adds the condition, "The above is conditioned upon your beginning work at once,"—beginning, not completing and putting into successful operation. This is the contract. When it was made, the condition was expressed. Its expression excludes the idea of another condition. Indeed, it is clear that both parties entertained the same idea that there was to be put upon the land a factory, and that the factory was to be put in operation successfully. The contract was intended to contribute to that end. To reach this end the land for a site must first be selected and obtained. The factory must be erected. Facility of reaching market must be afforded it. Then the adventure would be equipped for successful experiment. We see that the land was donated, and after a short delay, caused in no way by any reluctance or hesitation or doubt on the part of the land company, but by the engrossing business engagements of the president, the deed of conveyance was executed in the most solemn form, without qualification, condition, or defeasance and with warranty. The side track was not built; but the delay was explained by the president of the land company, and its early construction promised for a day anterior to the completion of the factory, long before it could be ascertained whether it could or could not be put in successful operation. Surely the successful operation of the factory could not have been intended to be a condition precedent to the performance by the land company of the first two propositions in Mr. Calhoun's letter. The real meaning of this contract and the postscript condition is this: "If you begin the work at once, the land company will donate you such three acres of land as you select, and will promptly build, or cause to be built, to the land so donated, a side track." "Promptly;" that is, at an early day thereafter; that is to say, "after your selection and our donation of the land." "And when the factory is completed and machinery in successful operation." "And when" indicates an event to happen in the future; that is, after the occurrences provided for in the preceding sentences. "And [that is to say, in addition to the above] when your factory," etc.,—a condition not heretofore expressed, and confined by its location and language to the proposition in which it is contained, "We will buy $2,500 worth of stock at par." The complainant is entitled to a decree for specific performance of this part of the contract,—the building of the side track. This conclusion has been reached in the absence of all evidence of fraud or of mala fides upon the part of the complainant; and it is without prejudice to any right which the defendant may have in case the complainant fail to put in operation a factory on the land conveyed to it, or should cease to use the land for the purposes of a factory. No opinion is expressed on these points.

The bill prays damages for the nonperformance of this part of the contract. It puts damages for the failure to construct the side track

while the factory was in process of erection, and another set of damages since its completion. There is no evidence whatever that any damages were caused by the absence of the side track during the erection of the building. There is an item of transportation of the boiler, and with this are items for transportation of coal and of 278 tons of fibre. There is, of course, no evidence of damage to the business of the factory since its completion, for it is not yet completed, and has done no business. Considering the whole case, there is no ground for granting damages in this court. The delay in constructing the side track was not caused by any willful act on the part of the defendant, but from its inability to do so. It did not own the right of way, and had no means of condemning it or compelling its sale. During the whole time it was earnestly endeavoring to get it, and finally, after much effort, has succeeded. Without this successful effort a decree for specific performance would scarcely have been made. The case came on to be heard on bill, answer, and testimony taken in open court. Hearing the same, and on due consideration thereof, it is ordered, adjudged, and decreed that the defendant, the North Augusta Land Company, do, within 40 days from the date of this decree, specifically perform its contract with the complainant of building a side track to the land donated and conveyed by defendant to plaintiff on the property of plaintiff opposite the city of Augusta, by beginning the construction thereof, and by completing the same within a reasonable time thereafter; the complainant to have leave at the foot of this decree to apply for any order which may become necessary. Further, let defendant pay the costs of these proceedings.